# In the United States Court of Federal Claims

No. 14-26C

(Filed Under Seal:  March 10, 2014)

(Reissued for Publication:  March 19, 2014)[1]

```
*************************************
                                    *
MANUS MEDICAL, LLC,                 *
                                    *
              Plaintiff,            *
                                    *   Bid Protest; Small Business Set-Aside;
v.                                  *   Lowest Price Technically Acceptable
                                    *   (LPTA)   Source   Selection   Process;
THE UNITED STATES,                  *   Incomplete Proposal; Agency's Use of
                                    *   the SBA's Certificate of Competency
              Defendant,            *   Procedures; Injunctive Relief.
                                    *
and                                 *
                                    *
MARATHON MEDICAL, LLC,              *
                                    *
              Defendant-Intervenor. *
                                    *
*************************************
```

*Eric S. Crusius*, Centre Law Group, LLC, Vienna, Virginia for Plaintiff.

*Joshua A. Mandlebaum*, Trial Attorney, with whom were *Stuart F. Delery*, Assistant Attorney General, *Bryant G. Snee*, Acting Director, and *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Bridget E. Grant*, Department of Veterans Affairs, Of Counsel, for Defendant.

*Kristen E. Ittig*, with whom was *Dominique L. Casimir*, Arnold & Porter, LLP, Washington, D.C. for Defendant-Intervenor.

---

[1]  The Court issued this opinion under seal on March 10, 2014, and gave the parties one week to submit any proposed redactions of competition-sensitive, proprietary, confidential, or other protected information.  The parties submitted their proposed redactions, which have been accepted by the Court. Redactions are indicated by [. . .].

## OPINION AND ORDER

WHEELER, Judge.

This bid protest raises the question of whether a procuring agency may cure an incomplete proposal from a small business offeror by submitting the matter to the Small Business Administration ("SBA") for a Certificate of Competency. For the reasons explained below, the Court finds that an agency cannot lawfully cure proposal defects by submitting them to the SBA, and that the contract award to an ineligible offeror cannot stand. Accordingly, the Court sustains Plaintiff's protest, and permanently enjoins the agency from proceeding with a contract that was illegally awarded.

## Factual Background[2]

This case arises from a Department of Veterans Affairs ("VA") procurement for custom surgical packs to be used at five VA Medical Centers in Denver, Colorado; Grand Junction, Colorado; Salt Lake City, Utah; Cheyenne, Wyoming; and Fort Harrison, Montana. Administrative Record ("AR") 26. On August 24, 2012, the VA issued the solicitation as a set-aside for Service-Disabled, Veteran-Owned Small Businesses. AR 23. Plaintiff, Manus Medical, LLC ("Manus"), and Defendant-Intervenor, Marathon Medical, LLC ("Marathon," or "MMC") were among the six offerors who competed for the award. AR, Tabs 15, 16. The solicitation contemplated the award of an indefinite delivery, indefinite quantity ("IDIQ") contract for a base year and four option years. AR 26. The VA intended to evaluate proposals and make an award by using a Lowest Price Technically Acceptable ("LPTA") source selection process. AR 88.

The solicitation contained nine components for determining Technical Capability that would be evaluated on a Pass/Fail basis. AR 88-89. In order to be considered technically acceptable, an offeror had to receive a "Pass" grade for all nine of these components. AR 89. A "Fail" grade in any category would result in the offeror being technically unacceptable and thus ineligible for award. Id. Of particular significance here, two of the nine Technical Capability components were as follows:

> H. (PASS/FAIL) – Has the offeror identified at least three (3) VA or other Federal, State or Local Government customers for whom the offeror has provided custom Surgical Packs described in this solicitation at any time. This may include up to three commercial customers if government

---

[2]  The facts in this decision are taken from the administrative record. The pages in the administrative record are numbered in sequence, and the documents are divided by tabs. The Court's citations to the administrative record generally are to the page numbers, except that large documents are referenced by the tab number.

customers are not available.  The reference list shall include:  customer, office contact, telephone number, fax number, and email address, shall be submitted in the proposal.

I.  (PASS/FAIL) – Did the offeror receive at least a "satisfactory" rating on each individual reference based on previous work to:  comply with schedules, training and skill levels of personnel accomplishing the work, responsiveness to customer requirements, effectiveness at identifying and correcting problems and overall satisfaction with service performance.

Id.

The VA issued five amendments to the solicitation between August 28, 2012 and October 4, 2012 (AR, Tabs 7-11), and revised the submission date for receipt of proposals to October 12, 2012 at 5:00 PM, Mountain Time (AR 179, 190).  On or before this due date, the VA received proposals from six firms.  AR, Tabs 15-20.  The VA evaluated the offerors' prices by adding the quoted price for the base year and each option year.  AR 1443.  Marathon submitted the lowest price of [. . .], and Manus submitted the second lowest price of [. . .].  Id.

However, in evaluating Technical Capability, the VA concluded that Marathon failed components "H" and "I" quoted above, because Marathon did not submit the names of any prior customers or references.  In the Source Selection Evaluation Board ("SSEB") report, dated February 5, 2013, the SSEB stated:

Marathon Medical had the lowest evaluated price, but obtained a "FAIL" rating in the "H" and "I" subfactors.  Marathon Medical did not provide any past performance sources in their proposal. . . .  Since the solicitation was clear that all factors must receive a "pass" rating, their proposal was found non-responsive and eliminated from competition.

AR 1444.  The VA determined that Manus received a "Pass" rating on all the Technical evaluation factors, and thus was eligible for award with the second lowest price.  Id.

Before making these determinations, the VA sent an Evaluation Notice ("EN") to Marathon, called a "FAR 15.306(a) Clarification," asking Marathon if the three sources required by section "H" under Technical Capability were mentioned in Marathon's proposal.  AR 1436.  Marathon responded by acknowledging that it "overlooked the requirement of listing these entities on the RFP package [it] presented," but listed four references that it had asked to provide evaluations before the proposal submission date.  Id.  None of Marathon's sources provided the requested information in a timely manner.

3

The VA also sent an EN FAR 15.306(a) Clarification to Manus asking to see samples of "equivalent" components offered in response to the agency's "Brand Name or Equal" specifications. AR 1438. Manus complied with this request (AR 1439), and the VA confirmed that all proposed components were equivalent (AR 1444).

On February 11, 2013, the Contracting Officer sent an Award Letter to Manus that the President of Manus signed and returned to the VA on the same day. AR 1445-46. The Award Letter indicated that the VA accepted Manus's October 12, 2012 proposal, and that the acceptance was contingent only upon approval from the VA's Contract Review Board, which was expected by March 1, 2013. AR 1446.

On February 27, 2013, the VA conducted a debriefing for Marathon in accordance with FAR 15.505. AR 1457. The Contracting Officer explained to Marathon that it received Technical Capability "Pass" ratings on all factors except "H" and "I," and stated specifically that "nothing was received" for these factors. Id. The Contracting Officer also stated that "all offers submitted before the closing date were considered final and no additional changes/additions could be accepted after that date." Id.

On March 4, 2013, counsel for Marathon filed a bid protest at the Government Accountability Office ("GAO"). AR 1458-70. Marathon challenged the VA's determination that Marathon's proposal was technically unacceptable. Id. With regard to the information called for in paragraphs "H" and "I" of the Technical Capability requirements, Marathon argued that it provided this information in response to the VA's clarification request. Id. On June 4, 2013, the GAO ruled upon Marathon's protest, characterizing the agency's follow-up communications with Marathon and Manus as "discussions," and recommending that the VA reopen negotiations with these offerors and allow them to submit revised proposals. AR 1966-72.

On June 13, 2013, the VA informed the parties that it would comply with the GAO's recommendation, but on September 11, 2013 (AR 1973), the VA reversed course and decided to submit the question of Marathon's eligibility for award to the SBA for a Certificate of Competency (AR, Tab 51). In its referral letter to the SBA, the VA's contracting officer stated "the offeror [Marathon] was found non-responsive to the solicitation because they did not include the required previous source list required by the evaluation factors." AR 1981. However, in a letter of the same date sent to the GAO, VA's Office of General Counsel stated:

> Where an offeror is a small business and an agency finds an otherwise technically acceptable small business offeror to be unacceptable under a LPTA pass/fail evaluation of responsibility-type criteria (here, the responsibility criteria being the two factors under which Marathon

"failed"), that constitutes a nonresponsibility determination that is required to be referred to the SBA for a Certificate of Competency determination.

AR 2107.

On October 30, 2013, the SBA's Area V office in Fort Worth, Texas issued a Certificate of Competency for Marathon, making Marathon eligible for award. AR 2112. On December 19, 2013, the VA made a new source selection evaluation finding that Marathon passed all of the Technical Capability components, and selecting Marathon for award as the lowest priced offeror. AR 2118-46. On January 2, 2014, the VA notified Manus that it would not be accepted for award, and accepted Marathon's proposal for award, subject to approval by the VA's Contract Review Board, expected by February 1, 2014. AR 2147, 2150. On January 10, 2014, Manus filed suit in this Court.

On January 22, 2014, the Government filed a two-volume administrative record consisting of 2,152 pages. The administrative record contains the VA's solicitation and amendments; the six proposals received from offerors; the VA's evaluation, source selection, and debriefing documents; the record from the GAO protest; and the VA's correspondence with the SBA and the offerors. The parties have filed cross-motions for judgment on the administrative record, as well as response and reply briefs. The Court heard closing arguments on February 21, 2014, and the case is ready for decision.

## Discussion

### A. Standard for Decision

The Court has jurisdiction over this bid protest pursuant to 28 U.S.C. § 1491(b)(1). In a bid protest, a reviewing court shall set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See § 1491(b)(4) (adopting the standard set forth in 5 U.S.C. § 706). This standard is satisfied when two conditions are met: (1) the procurement decision lacked a rational basis or involved a violation of regulation or procedure; and (2) the protestor was prejudiced by this error. Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907-08, 912 (Fed. Cir. 2013).

In the case of an agency's decision to take corrective action, contracting officers are afforded "broad discretion . . . where the agency determines that such action is necessary to ensure fair and impartial competition." DGS Contract Serv., Inc. v. United States, 43 Fed. Cl. 227, 238 (1999) (quoting Rockville Mailing Serv., Inc., B–270161, 96–1 CPD ¶ 184, at 3 (Comp. Gen. Apr. 10, 1996)). Nevertheless, corrective action must still be "reasonable under the circumstances and appropriate to remedy the impropriety."

Reema Consulting Servs., Inc. v. United States, 107 Fed. Cl. 519, 527 (2012) (internal quotation marks omitted).  In other words, the agency's action must be rationally related to the defect it purports to correct.

> B.  Analysis of the Merits

This is a relatively simple case made more complicated by some curious agency actions following receipt of a GAO bid protest decision.  Broadly speaking, the question presented is whether the VA's corrective action was reasonable.  More specifically, the question is whether the VA's referral of Marathon's incomplete proposal to the SBA for a Certificate of Competency determination was proper, given the agency's original decision to exclude that proposal for failing to provide information explicitly required by the solicitation.  The answer, as explained below, is that there was nothing improper about the VA's original decision, and without any impropriety to remedy, the VA's corrective action cannot be defined as reasonable, nor can it be upheld.

> 1.  The Original Procurement Decision

The starting point of this analysis is the VA's original decision, which it previously defended in the GAO protest as follows:

> MMC acknowledged in its response to the EN sent to it that it had overlooked [the past performance evaluation] requirement.  It is an offeror's responsibility to submit a well-written proposal, which clearly demonstrates compliance with the solicitation and allows a meaningful review by the agency.  International Med. Corps., B-403688, Dec. 6, 2010, 2010 CPD ¶ 292 at 8.  Further, with respect to VA's refusal to consider MMC's late submittal of past performance references . . . the solicitation clearly stated that *failure to submit complete information* . . . may exclude the proposal from further consideration.
> . . . .
> MMC contends the FAR 15.305(a)(2)(iv) instructs that in cases where past performance information is not available, "the offeror may not be evaluated favorably or unfavorably on past performance."  This FAR subsection is not applicable here because MMC was not evaluated favorably or unfavorably, it was appropriately found nonresponsive.  Furthermore, the past performance information would have been available had it been submitted in a timely manner

> pursuant to the solicitation. Then, and only then, could MMC
> receive an evaluation of its past performance. Proposals with
> significant informational deficiencies may be excluded,
> whether the deficiencies are attributable to either being
> omitted or merely inadequate information addressing
> fundamental factors. American Med. Depot, B-285060 et al.,
> July 12, 2000, 2002 CPD ¶ 7 at 6-7.

AR 1621-22. The unfortunate reality here is that the VA's first decision in this procurement was correct, and the subsequent "corrective" actions have served only to introduce error and confusion into an otherwise straightforward circumstance. Understanding why this is so requires a review of the solicitation, Marathon's proposal, and the range of proper agency discretion upon receiving that proposal.

### a. The Solicitation and Marathon's Proposal

In general, when using the LPTA source selection process, award is "made on the basis of the lowest evaluated price of proposals meeting or exceeding the acceptability standards for non-cost factors." FAR 15.101-2(b). Whether to include past performance among these non-cost evaluation factors is left to the discretion of the contracting officer. Id. In this specific case, the VA elected to include past performance. AR 82-83, 86, 89. In addition, the solicitation clearly stated that the "Government intend[ed] to evaluate offers and award a contract without discussions with offerors" (AR 84), and warned that failure to submit complete information "may exclude the proposal from further consideration" (AR 87). That is precisely what occurred. When Marathon failed to include the required proposal information, it was eliminated from the competition. AR 1444.

### b. Agency Discretion

Discretion, by definition, involves the freedom to choose between certain options. Here, the issue is which options were available when the VA received Marathon's incomplete proposal. On the one hand, "where, in a negotiated procurement, an offeror's proposal does not comply with the solicitation's requirements, 'an agency is not required to eliminate the awardee from the competition, but may permit it to correct its proposal.'" ManTech Telecomms. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 71 (2001) (quoting D & M Gen. Contracting, Inc., B–252282 et al., 93-2 CPD ¶ 104, at 2 (Comp. Gen. Aug. 19, 1993)), aff'd, 30 F. App'x 995 (Fed. Cir. 2002). On the other hand, an agency is also not obligated to open discussions to obtain missing information when it discovers an offeror's omission. Orion Tech., Inc. v. United States, 102 Fed. Cl. 218, 232 (2011), aff'd, 704 F.3d 1344 (Fed. Cir. 2013). Accordingly, Marathon "could not have

had any expectation when it submitted its proposal that it would have the opportunity to rectify proposal deficiencies through discussions." Id.

Nonetheless, the Government's and Marathon's arguments rest on the notion that factors "H" and "I" are responsibility factors and, therefore, Marathon's failure to submit the required information mandates referral to the SBA. However, referral to the SBA is necessary only "[u]pon determining and documenting that an apparent *successful* small business offeror *lacks certain elements of responsibility*." FAR 19.602-1 (emphasis added). Such was not the case here, as Marathon's lack of success was determined by its deficient proposal, and the merits of its past performance were never evaluated because it neglected to provide the information for evaluation. Thus, the critical distinction is between failing a past performance evaluation and failing to submit the information necessary for the agency to conduct such an evaluation.

Instructive in understanding this distinction is another GAO decision, Menendez–Donnell & Assocs., B-286599, 2001 CPD ¶ 15 (Comp. Gen. Jan. 16, 2001). The protestor, MDA, submitted a proposal that omitted some required information about its experience and past performance, resulting in the rejection of its proposal as unacceptable. One of MDA's arguments was that the agency "should have referred its technical unacceptability to the Small Business Administration (SBA) for review under that agency's certificate of competency program, citing Federal Acquisition Regulation (FAR) § 15.101-2(b)(1)." Id. at 3. In denying MDA's protest, the GAO "conclude[d] that the agency reasonably found that MDA's proposal failed to provide the information required by the RFP to enable it to evaluate MDA's key subcontractors":

> The information . . . was available, but MDA chose not to present the information in its proposal, in direct contravention of the terms of the RFP. In our view, an offeror cannot simply choose to withhold past performance information . . . where the solicitation expressly requires that the information be furnished, and where the information is readily available to the offeror.
> . . . .
> [T]he reasons the agency found MDA's proposal unacceptable concerned only MDA's failure to submit information establishing its and its subcontractors' experience and past performance, and did not constitute a finding that MDA is not a responsible prospective contractor.

Id. at 3 & n.1. This Court agrees with the GAO's reasoning in the Menendez decision and finds that two principles guiding that decision are worthy of amplification. First,

8

Case 1:14-cv-00026-TCW   Document 35   Filed 03/19/14   Page 9 of 12
offerors have an affirmative duty to submit a proposal that conforms to the explicit requirements outlined in the solicitation. Second, submitting a proposal and evaluating a proposal are two distinct steps, and failure at one step does not equal failure at the other. In other words, finding that an offeror failed to submit required information for a past performance evaluation is different from finding that an offeror is not a responsible contractor. Applying those principles to this case, it is clear that the VA was well within its discretion to reject Marathon's incomplete proposal.

Moreover, even though <u>Menendez</u> involved a comparative evaluation of past performance as part of a "best value" procurement, not an LPTA procurement, the reasoning behind that decision is equally applicable here. When using the LPTA source selection process, the contracting officer may "elect[] to consider past performance as an evaluation factor." FAR 15.101-2(b). Such an election, however, does not eliminate the general contracting requirement to make an affirmative determination of responsibility prior to every award. FAR 9.103(a)-(b). In addition to past performance, this determination requires consideration of, among other things, a prospective contractor's financial resources, business ethics, organization, experience, accounting and operational controls, and technical skills. FAR 9.104–1. Thus, an LPTA award can be understood as proceeding in two broad steps: (1) evaluation and identification of the lowest priced, technically acceptable proposal, which may include past performance as an evaluation factor; and (2) determination of the apparent awardee's responsibility, which must include past performance along with other responsibility factors. That the evaluation is made on a Pass/Fail basis does not alter the fact that it is a discrete step, or that information is necessary to take that step. Accordingly, an offeror cannot reach the second hurdle until it passes the first, and it cannot even reach the first unless it submits a proposal that conforms to the solicitation's requirements. Indeed, when an agency cannot evaluate information because the offeror fails to provide it, the agency does not reach the question of responsibility, and thus is not required to refer the matter to the SBA. <u>Pacific Sky Supply, Inc.</u>, B-215189 et al., 85-1 CPD ¶ 53, at 4 (Comp. Gen. Jan. 18, 1985).

In sum, Marathon failed to submit a complete proposal, and the VA retained discretion to either reject the proposal or allow Marathon to correct its deficiencies. The VA chose the former option, and, because this choice was a proper exercise of its discretion, this proposal evaluation should have ended there. Unfortunately, resolution would not come so easily.

2. <u>The Corrective Actions</u>

The logic of the VA's actions began to unravel when the GAO sustained Marathon's protest of the initial award to Manus, and the VA took corrective action by "allowing Marathon to provide the references it initially omitted." AR 1972. Manus

filed a protest in the Court of Federal Claims, but that protest was rendered moot when the VA implemented its second corrective action.  See Manus Medical, LLC v. United States, No. 1:13-cv-428 (Fed. Cl. Sep. 13, 2013) ("Manus I").  During oral argument, counsel for the Government conceded that the first corrective action was erroneous, and the Court concurs with that assessment.

Unfortunately, the second action turned out to be no more rational than the first.  As noted above, corrective action must be "'reasonable under the circumstances' and 'appropriate to remedy the impropriety.'"  ManTech Telecomms., 49 Fed. Cl. at 65 (citations omitted).  In this case, there was no impropriety with the original award.  Marathon submitted incomplete information, and the VA properly exercised its discretion in rejecting Marathon's proposal because of its omissions.  The agency error did not occur until later, for referring an incomplete proposal to the SBA for a Certificate of Competency determination does not constitute a proper exercise of discretion.  Thus, the irony of this procurement is that the VA's only correct decision was its first one, and the "corrective" actions it has taken since then have served only to lead matters further astray.

### 3. Injunctive Relief

In deciding whether a permanent injunction is proper, the Court weighs four factors:  "whether (1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief."  Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009).  Although no single factor is dispositive, "success on the merits is the most important."  Blue & Gold Fleet, LP v. United States, 70 Fed. Cl. 487, 514 (2006), aff'd, 492 F.3d 1308 (Fed. Cir. 2007).  That factor has already been addressed above.

Under the second factor, the loss of a contract can constitute irreparable harm.  Honeywell, Inc. v. United States, 16 Cl. Ct. 173, 181 (1989), rev'd on other grounds, 870 F.2d 644 (Fed. Cir. 1989).  In this case, Manus was the apparent awardee (AR 1445), and its performance under the contract would have begun had it not been for the agency errors described above.  Consequently, this factor also weighs in Manus's favor.

Third, the harm to Manus must be balanced against the harm to the Government and to Marathon.  See CW Gov't Travel, Inc. v. United States, 110 Fed. Cl. 462, 495 (2013).  As between Manus and Marathon, the balance generally weighs "in favor of the protestor who has succeeded on the merits," BayFirst Solutions, LLC v. United States, 102 Fed. Cl. 677, 696 (2012), and here there are no circumstances that counsel against

that general rule.  As between Manus and the Government, the latter argues that the balance of hardships weighs in its favor because finding for Manus would delay award of the contract, thereby costing the VA additional money to maintain its current level of contractor support.  Dkt. No. 23 at 24.  This argument is unpersuasive for the simple reason that the delay in award was not caused by Manus, but by the VA's own errors. The VA may not cause itself harm, then use that self-inflicted harm as a weapon against an offeror that has done nothing but abide by the rules of the procurement process from the very beginning.

This brings the analysis to the fourth factor, public interest.  Here, the crucial consideration is maintaining the integrity of the procurement process.  According to the Government, this factor weighs in its favor because enjoining the VA from contracting with Marathon would undermine the authority of the SBA.  Dkt. No. at 25.  This argument misapprehends the real issue in this case.  The authority of the SBA is not in question because the VA should never have referred the matter to the SBA in the first place.   Thus, the Court is not reviewing the SBA's status as the final arbiter of responsibility determinations; rather, it is reviewing the reasonableness of the VA's actions in managing the procurement process.  Framing the issue in such a manner makes the public interest consideration clear:  "that there is an important public interest in fair and open competition in the government procurement process."  Sys. Application & Techs., Inc., v. United States, 100 Fed. Cl. 687, 721 (2011), aff'd, 691 F.3d 1374 (Fed. Cir. 2012).  When an agency "properly evaluate[s] the offerors' proposals and render[s] a source selection decision, its decision to take corrective action upsets a properly awarded contract and therefore violates the laws meant to guarantee fair competition in government procurements."  Id. at 719.  This is precisely the error made by the VA, which undermined its original proper evaluation with subsequent improper "corrective" actions.  The VA has already harmed itself in the process, but were its actions allowed to stand, the wider-reaching damage would be to the integrity of the procurement process itself.

Accordingly, the Court finds that injunctive relief is appropriate.

## Conclusion

For the reasons set forth above, Plaintiff's motion for judgment on the administrative record is GRANTED.   Defendant's motion for judgment on the administrative record is DENIED, and Defendant-Intervenor's motion for judgment on the administrative record is DENIED.

The VA is hereby enjoined from awarding Marathon a contract, or permitting any performance of a contract by Marathon, under Solicitation VA259-12-R-0078 based on

11

the VA's prior corrective actions.  Any party wanting to challenge any future VA action under this solicitation or a related solicitation may file a new action in this Court and designate it as a directly related case to be assigned to Judge Wheeler.

        IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge
